IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

RUHI REIMER,
     Plaintiff,

                                      Civil No. 3:22cv153(DJN)

     v.

LEXISNEXIS RISK SOLUTIONS, INC.
and STATE FARM MUTUAL AUTO. INS. CO.,
     Defendants.

## MEMORANDUM OPINION

Plaintiff Ruhi Reimer brought this action against Defendant LexisNexis Risk Solutions, Inc. ("LNRS"), for allegedly inaccurately reporting his driver's license number and state of issuance and failing to use reasonable procedures to assure accuracy in reporting, and Defendant State Farm Mutual Automobile Insurance Company ("State Farm") (together with LNRS, "Defendants"), for allegedly failing to conduct a reasonable investigation after receiving notice of a dispute, all in violation of the Fair Credit Reporting Act ("FRCA"), § 1681, *et seq*. This matter comes before the Court on Defendant State Farm's Motion to Dismiss (ECF No. 25) and LNRS's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 27), both moving to dismiss Plaintiff's Amended Complaint ("Am. Compl." (ECF No. 23)) for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will GRANT Defendants' Motions to Dismiss (ECF Nos. 25, 27) and DISMISS WITHOUT PREJUDICE Plaintiff's Amended Complaint (ECF No. 23).

## I.    BACKGROUND

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the

court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal

for lack of subject matter jurisdiction may attack the complaint on its face, asserting that the

complaint "fails to allege facts upon which subject matter jurisdiction can be based." *White v.*

*CMA Constr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). When a

defendant asserts that the complaint fails to allege sufficient facts to support subject matter

jurisdiction, the court applies a standard patterned on Rule 12(b)(6) and assumes the truthfulness

of the facts alleged in the complaint. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

As such, the Court accepts the factual allegations in the Amended Complaint as true at this stage.

### A.    Factual Allegations

Defendant LNRS regularly engages in the business of assembling, evaluating, and

disseminating information regarding consumers via "consumer reports" to third parties in their

role as a "consumer reporting agency" ("CRA"). (Am. Compl. ¶ 9.) Defendant State Farm, an

insurance products seller, "furnishes" information to consumer reporting agencies. (Am. Compl.

¶ 8.) As a customer of State Farm and LNRS, Plaintiff Ruhi Reimer constitutes a "consumer"

under the FCRA. (Am. Compl. ¶ 7.)

Around April 2020, Plaintiff obtained his LNRS consumer report.[1] (Am. Compl. ¶ 28.)

Due to prior alleged inaccuracies regarding State Farm claims by State Farm and LNRS, Plaintiff

---

[1]      Plaintiff refers to this document as a "consumer report" throughout the complaint, while
Defendant LNRS maintains that consumers can request a "file disclosure" but that the term
"consumer report" refers only to reports that CRAs disseminate to third-party creditors. As the
moniker of the report does not change the analysis below, for ease and consistency throughout,
and because the Court takes Plaintiff's allegations as true at this stage, the Court will refer to the
report requested by Plaintiff and disseminated to third parties as the "consumer report."

has been "on high alert for inaccurate information in his consumer reports." (Am. Compl. ¶ 27.) Plaintiff alleges that LNRS reported inaccurate information about claims regarding two vehicles, a Nissan Maxima which he owned and a Chevrolet Suburban owned by a third party, secondary policyholder Nooshin Reimer. (Am. Compl. ¶ 28.) According to Plaintiff, LNRS inaccurately reported a driver's license number and state of issuance for himself and Nooshin Reimer on the data blocks of State Farm Claims numbered 46542T627140826 and 46789W856151223.[2] (Am. Compl. ¶ 29.) Plaintiff pleads no other factual inaccuracies.

On April 16, 2020, by letter, Plaintiff disputed the alleged inaccurate information that LNRS reported regarding the Nissan Maxima and requested that the information be verified or, if not, deleted. (Am. Compl. ¶ 30.) Plaintiff also requested an updated copy of the report. (Am. Compl. ¶ 30.) On April 20, 2020, by letter, Plaintiff disputed the alleged inaccurate information that LNRS reported regarding the Chevrolet Suburban and requested that the information be verified or, if not, deleted, and requested an updated copy of the report. (Am. Compl. ¶ 31.) LNRS forwarded Plaintiff's dispute to State Farm within five business days of receipt. (Am. Compl. ¶ 33.) By letter dated May 5, 2020, LNRS responded to Plaintiff's disputes and verified the information regarding the Nissan and updated the Chevrolet's information. (Am. Compl. ¶ 34.) Plaintiff sent "multiple disputes" to LNRS, but LNRS, according to Plaintiff, merely "parroted" the information received from furnisher State Farm in the report. (Am. Compl. ¶¶ 49-50.)

---

[2]     Plaintiff also alleges that LNRS inaccurately reported the State Farm claim numbers 46542T627140826 and 46789W856151223 themselves. However, these allegations first appeared in Plaintiff's Opposition to Defendant LNRS's Motion to Dismiss Plaintiff's Amended Complaint ("Pl.'s Opp. to LNRS" (ECF No. 30.)). As this matter comes before the Court on a motion to dismiss, the Court will not look beyond factual allegations pled in the Amended Complaint.

Plaintiff alleges that LNRS published Plaintiff's consumer report and information with the inaccurate information contained in the report, even after being on notice of the alleged inaccuracies. (Am. Compl. ¶ 56.) Plaintiff alleges disbursement to "numerous third-parties," "such as American Express, Rapid Financial Services, LLC, and Nationwide Credit Inc." (Am. Compl. ¶¶ 57-58.)

In the meantime, Plaintiff also directly disputed the information with State Farm in writing regarding the Nissan and Chevrolet claims. (Am. Compl. ¶ 35.) Plaintiff alleges that State Farm knew or should have known about the Nissan claim's inaccurate information due to a prior lawsuit and confidential settlement regarding this claim. (Am. Compl. ¶¶ 36-37.) By letter dated June 2, 2020, State Farm responded to the dispute, referring to the prior settlement and the case's dismissal with prejudice, which Plaintiff alleges does not resolve State Farm's inaccurate reporting about Plaintiff to LNRS in 2020. (Am. Compl. ¶ 38.) After LNRS responded to Plaintiff saying that it had verified the information and failed to correct it, Plaintiff attempted to dispute the information with State Farm directly three times. (Am. Compl. ¶ 61.)

According to Plaintiff, by failing to establish or follow reasonable procedures to assure accuracy in the consumer reports that it published and maintained, LNRS violated § 1681e(b) of the FCRA. Additionally, by allegedly failing to conduct a reasonable reinvestigation of the inaccurate information and update or delete the information, LNRS violated § 1681i(a)(1). Plaintiff alleges that State Farm violated § 1681s-2(b)(1)(A) by failing to reasonably investigate the disputed information when alerted by LNRS.

Plaintiff remains "very concerned about the accuracy of the information that is contained in his consumer report and spends a great deal of time and attention into reviewing" his information. (Am. Compl. ¶ 61.) As a result of the allegedly inaccurate driver's license and

state of issuance information, Plaintiff "lost a significant amount of time attempting to resolve the inaccuracy" and felt "greatly distressed" to learn that LNRS did not correct the information. (Am. Compl. ¶¶ 64-65.)  Plaintiff also incurred economic losses over one dollar in the form of "postage expenses" from mailing additional dispute letters. (Am. Compl. ¶ 64.)  Plaintiff alleges that, as a result of State Farm and LNRS's conduct, he suffered "economic losses, physical injuries, emotional distress and mental anguish" and incurred "loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress." (Am. Compl. ¶¶ 48, 66, 69, 74, 82.)  He additionally claims "other physical injuries resulting from mental and emotional distress" as a result of LNRS's alleged failure to establish or follow procedure. (Am. Compl. ¶ 69.)  Plaintiff seeks awards of actual damages, statutory damages, punitive damages, costs and attorney's fees from LNRS under § 1681e(b), § 1681n and § 1681o and actual damages, statutory damages, punitive damages, costs and attorney's fees from State Farm under § 1681n and § 1681o.[3]  (Am. Compl. ¶¶ 71, 76, 83, 90.)

B.      **Defendants' Motions to Dismiss**

On July 13, 2022, Defendants LNRS and State Farm filed their Motions to Dismiss Plaintiff's Amended Complaint, each separately moving the Court to dismiss the Amended Complaint for lack of subject matter jurisdiction, or, in the alternative, for failure to state a claim upon which relief can be granted.

In support of its motion under Rule 12(b)(1), Defendant LNRS argues that Plaintiff lacks Article III standing. (Defendant LNRS' Mem. in Supp. of Mot. to Dismiss Pl.'s Am. Compl.

---

[3]      Plaintiff requests "specific performance and injunctive relief; and such other relief the Court deems just and proper" in the last paragraph of the Amended Complaint, unassociated with any Counts.  Additionally, the Amended Complaint does not provide details as to what specific performance or injunctive relief Plaintiff requests.  Due to the boilerplate nature of this request, the Court does not consider Plaintiff's request for injunctive relief or other relief.

("LNRS Mem.") (ECF No. 28) at 5-7.)  Specifically, LNRS argues that Plaintiff does not plausibly allege a concrete injury-in-fact sufficient under Article III.  (LNRS Mem. at 5.)  LNRS argues that, even if Plaintiff plausibly alleges a statutory violation under the FCRA, no harm occurred that gives rise to a constitutional injury-in-fact.  (LNRS Mem. at 5.)  Further, LNRS argues that the only allegedly inaccurate information in Plaintiff's consumer report is an inaccurate driver's license number and state of issuance for Plaintiff and Secondary Policyholder Nooshin Reimer, which constituted "*at most*, a harmless technical error."  (LNRS Mem. at 6 (emphasis in original.))  Additionally, Defendant LNRS argues that Plaintiff's "boilerplate references to 'economic losses, physical injuries, emotional distress, and mental anguish'" insufficiently plead concrete harms, as Plaintiff fails to identify what losses or injuries occurred or how the inaccurate information caused said harms.  (LNRS Mem. at 6.)  LNRS also argues that no additional allegations support Plaintiff's emotional distress claims.  (LNRS Mem. at 7.)

In the alternative, LNRS argues that Plaintiff fails to state a claim upon which relief can be granted under Rule 12(b)(6).  (LNRS Mem. at 2.)  Specifically, LNRS argues that Plaintiff fails to plausibly allege a third-party disclosure of his consumer report, as required for a claim under § 1681e(b).  (LNRS Mem. at 7-10.)  LNRS also argues that Plaintiff fails to plausibly allege an unreasonable reinvestigation of his disputes that would constitute a violation of § 1681i(a)(1).  (LNRS Mem. at 10-13.)

In support of its motion under Rule 12(b)(1), Defendant State Farm argues that Plaintiff lacks Article III standing.  (Br. in Supp. of Mot. to Dismiss ("State Farm Mem.") (ECF No. 26) at 6-10.)  Specifically, State Farm argues that Reimer fails to plausibly allege that he sustained an injury-in-fact as a result of the alleged statutory violation.  (State Farm Mem. at 10.)  In support of this argument, State Farm argues that Plaintiff only alleges a statutory violation — that it

failed to conduct a reasonable investigation with regards to the inaccurate driver's license

information — but that Plaintiff does not plead any harm or injury that resulted from the alleged

violation, nor does he demonstrate that Congress sought to prevent this type of harm in enacting

the FCRA. (State Farm Mem. at 10.)  In the alternative, State Farm argues that Plaintiff fails to

state a claim upon which relief can be granted under Rule 12(b)(6), as Plaintiff's fails to

plausibly allege that State Farm provided inaccurate information to LNRS and that Plaintiff

insufficiently pleads the damages sustained.  (State Farm Mem. at 11-14, 17-18.)

In response to LNRS's Motion, Plaintiff contends that he has pled sufficient facts to

confer Article III standing under three separate theories:  (1) publication or disclosure to third

parties of material inaccurate information, (2) emotional distress and (3) lost time.  (Pl.'s Opp. to

Def. LNRS's Mot. to Dismiss Pl.'s Am. Compl. ("Pl.'s Opp. to LNRS") (ECF No. 30) at 1.)

Plaintiff argues that intangible harms satisfy injury-in-fact requirements, which the violation of a

procedural right granted by federal statute can establish.  (Pl.'s Opp. to LNRS at 5 (*citing*

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).)  Plaintiff also argues that dissemination of

inaccurate information to third parties itself establishes a concrete and particularized injury,

which confers standing.  (Pl.'s Opp. to LNRS at 5, 7 (*citing TransUnion LLC* v. *Ramirez*, __

U.S. __, 141 S. Ct. 2190, 2219 (2021)).)  Plaintiff further emphasizes that the third party need

not read, view, or rely upon the disseminated information to establish an injury.  (Pl.'s Opp. to

LNRS at 7 (collecting cases).)  Plaintiff thus argues that allegations of inaccurate driver's license

numbers and states of issuance reported to third parties, which "can negatively impact Plaintiff's

ability to obtain insurance" sufficiently establish injury for standing purposes.  (Pl.'s Opp. to

LNRS at 8.)

7

Additionally, Plaintiff argues that loss of time and emotional distress constitute injury for purposes of an FCRA claim. (Pl.'s Opp. to LNRS at 8.) Plaintiff alleges that he lost "significant amount of time" by sending multiple disputes to LNRS and the furnisher (State Farm) and lost more than one dollar in postage expenses. (Pl.'s Opp. to LNRS at 9.) In addition, Plaintiff argues that emotional distress establishes an injury-in-fact and alleges that he "was greatly distressed" and suffered "emotional distress and mental anguish" as a result of LNRS's conduct. (Pl.'s Opp. to LNRS at 9.) Plaintiff also addresses LNRS's Rule 12(b)(6) arguments, arguing that he plausibly pleads (1) third-party disclosures and (2) unreasonableness of the reinvestigation following dispute, the reasonableness of which remains a question for the jury. (Pl.'s Opp. to LNRS at 10-14.)

In response to State Farm's Motion, Plaintiff argues that he plausibly pleads sufficient facts to confer standing under the same three theories as LNRS: dissemination to third parties, emotional distress and lost time. (Pl.'s Opp. to Def. State Farm's Mot. to Dismiss ("Pl.'s Opp. to State Farm") (ECF No. 29) at 1.) Plaintiff argues that allegations of lost time, expenses of more than one dollar, and "physical injuries, mental anguish and emotional distress" confer Article III standing. (Pl.'s Opp. to State Farm at 7 (*citing Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 845-46 (E.D. Va. 2017).) Plaintiff alleges that the emotional distress and loss of time fairly trace to the alleged FCRA violation by State Farm, as "[r]eporting inaccurate insurance claim information" carries a risk of harm that the inaccuracy could result in negative impacts on Plaintiff's "insurability, rates, to receive discounts, and other favorable terms." (Pl.'s Opp. to State Farm at 7.) Plaintiff also argues that the dissemination of information from State Farm to LNRS parallels publication of a defamatory statement, and dissemination alone of "false/misleading information" requires no further harms for injury-in-fact. (Pl.'s Opp. to State

8

Farm at 8 (*citing Ramirez*, 141 S. Ct. 2208-09).) As Plaintiff alleges the inaccurate information and the dissemination to LNRS in his Amended Complaint, and then alleges subsequent failure of State Farm to remedy the inaccuracy, Plaintiff holds that this confers standing, especially with the risk of insurability being affected or "painting Plaintiff in a negative light." (Pl.'s Opp. to State Farm at 10.)

Plaintiff further argues that he plausibly states a claim under § 1681s-2(b) in his Amended Complaint. (Pl.'s Opp. to State Farm at 10-12, 14-17.) Plaintiff argues that he has plausibly pled that State Farm provided "false information" to LNRS. (Pl.'s Opp. to State Farm at 10-11.) Plaintiff also rebuts State Farm's arguments that he has implausibly pled sufficient facts to allege negligent and willful violations of the FCRA, based on information and belief available to him before discovery. (Pl.'s Opp. to State Farm at 14-17.)

Defendants filed their Replies on August 2, 2022 (Reply to Pl.'s Opp. to State Farm's Mot. to Dismiss ("State Farm Reply") (ECF No. 31), and Def. LNRS's Reply Br. in Supp. of its Mot. to Dismiss Pl.'s Am. Compl. ("LNRS Reply") (ECF No. 32)), rendering the matter ripe for review. Both Defendants argue that Plaintiff failed to allege in the Amended Complaint any harm as a result of the alleged inaccuracies in insurance information that suffice for an injury-in-fact under Article III standing doctrine. (LNRS Reply at 4-7; State Farm Reply at 1-7.)

## II.    STANDARD OF REVIEW

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal for lack of subject matter jurisdiction may either attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or may attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings."

9

*White*, 947 F. Supp. at 233 (internal citations omitted). In either case, the plaintiff bears the burden of proof to establish jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). When, as here, a defendant makes a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court will treat the motion similar to one made for failure to state a claim under Rule 12(b)(6) and take only the facts alleged in the complaint as true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

### III.    ANALYSIS

LNRS argues that Plaintiff's claims against it fails for three reasons: (1) Plaintiff lacks standing; (2) Plaintiff did not plausibly allege third-party dissemination, as required under § 1682e(b); and (3) Plaintiff did not plausibly allege a failure to reasonably reinvestigate disputed information. State Farm argues that Plaintiff's claims against it fails for two reasons: (1) Plaintiff lacks standing; and (2) Plaintiff fails to plausibly allege inaccurate or incomplete information in the credit report. Because Defendants' jurisdictional challenges determine the Court's authority to consider their merits challenges, the Court will consider the standing challenges first. *See Griffin v. Dep't of Labor Fed. Credit Union*, 293 F. Supp. 3d 576, 578 (E.D. Va. 2018), *aff'd*, 912 F.3d 649 (4th Cir. 2019) (addressing standing arguments first, because an absence of standing deprives the court of the power to adjudicate anything further about the claim); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and

10

dismissing the cause."). Only if the Court has determined that it has subject matter jurisdiction will it consider the merits of Defendants' Rule 12(b)(6) challenges.

### A.   Plaintiff Lacks Standing to Bring a Claim for Money Damages Against LNRS.

#### 1.   Standing Principles Under the FCRA

Defendants both argue that Plaintiff lacks standing, because he has not suffered an "injury-in-fact" under Article III. (LNRS Mem. at 5; State Farm Mem. at 10.) Defendants argue more specifically that Plaintiff does not plausibly allege any concrete injury or harm suffered as a result of their conduct, thus warranting a finding that he lacks standing. (LNRS Mem. at 5; State Farm Mem. at 10.)

Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." U.S. Const. art. III § 2. To satisfy the case-or-controversy requirement of Article III, as the party invoking federal jurisdiction, the plaintiff must establish his standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Balzer & Assocs., Inc. v. Union Bank & Trust Co.*, 2009 WL 1675707, at *2 (E.D. Va. June 15, 2009) ("On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction has the burden of proving subject matter jurisdiction." (citation omitted)). To satisfy this requirement, a plaintiff must establish standing to bring suit. *Lujan*, 504 U.S. at 560–61. To meet the "irreducible constitutional minimum" requirements for standing, a plaintiff must establish three elements: (1) that the plaintiff has sustained an injury in fact; (2) that the injury traces to the defendants' actions; and (3) that a favorable judicial decision could likely redress the injury. *Uzuegbunam*, 141 S. Ct. at 797; *Gaston Copper Recycling Corp.*, 629 F.3d at 396 (*citing Lujan*, 504 U.S. at 560–61). Relevant to the case at bar, the plaintiff, to demonstrate an injury-in-fact, must suffer a concrete and particularized invasion of a legally protected interest. *Gaston Copper Recycling*

11

*Corp.*, 629 F.3d at 396 (*citing Lujan*, 504 U.S. at 560); *McBurney*, 616 F.3d at 410. Only an actual or imminent invasion will suffice, as conjectural or hypothetical injuries cannot confer standing. *Spokeo*, 758 U.S. at 339. In the credit reporting context, the Supreme Court has stated that "not all inaccuracies cause harm or present any material risk of harm." *Id.* at 342.

While the *Spokeo* Court held that Congress enacted the FCRA to "curb the dissemination of false information by adopting procedures designed to decrease that risk," the Court made plain that plaintiffs "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Id.* As "[a] violation of one of the FCRA's procedural requirements may result in no harm," a plaintiff must allege sufficient injury — in addition to the procedural violation — for there to be standing under Article III. *Id.* The Court gave an incorrect zip code as the paradigmatic example of a statutory violation that would not confer standing as "it is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* Defendants argue that Plaintiff's alleged injury — LNRS reporting an incorrect driver's license number and state of issuance to third parties — equals reporting an incorrect zip code, as no concrete harm comes from the alleged inaccuracy.

Plaintiff contests this analogy and emphasizes that the reporting need not result in harm; the third-party dissemination of the alleged inaccuracy provides sufficient injury-in-fact alone under *TransUnion LLC* v. *Ramirez*. 141 S. Ct. at 2209. The *Ramirez* Court emphasized that the concrete-harm requirement of standing analysis requires a court to assess "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204 (*citing Spokeo*, 578 U. S. at 341). While "traditional tangible harms, such as physical harms and monetary harms" constitute concrete injuries in fact under Article III, intangible harms can also be concrete if closely related to harms

12

traditionally brought in American courts. *Id.* And while Congress' views "may be 'instructive'" as to whether the harm has actionable legal status, statutory prohibitions do not simply enact Article III injuries-in-fact. *Id.* at 2204-05 (*quoting Spokeo*, 578 U. S. at 341). Thus, an intangible harm based purely on a statutorily created procedural violation and divorced from a traditionally recognized basis for a lawsuit does not automatically satisfy the injury-in-fact requirement of Article III.

The *Ramirez* Court nevertheless found that third-party dissemination of plaintiff's consumer reports bearing a misleading Office of Foreign Assets Control ("OFAC") Sanctions List alert injured the plaintiffs, satisfying standing requirements of a concrete harm. It found that the injury bears "a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts — namely, the reputational harm associated with the tort of defamation." *Id.* at 2208 (*citing Spokeo*, 578 U.S. at 341). As the reports provided to third parties contained alerts that "labeled the class members as potential terrorists, drug traffickers, or serious criminals[,]" the reports' harms bore a close relationship with the actionable harm of reputational damage under defamation and thus the members suffered a concrete harm that qualified as an injury-in-fact. *Id.* at 2209. The Court distinguished between those class members with reports "published" to third parties from those whose reports remained internally with incorrect information, noting that "'if inaccurate information falls into' a consumer's credit file," with no dissemination, "'does it make a sound?'. . . [N]o." *Id.* (*quoting Owner-Operator Indep. Drivers Assn. v. United States Dept. of Transp.*, 879 F.3d 339, 344 (D.C. Cir. 2018)).

Here, Plaintiff alleges that third-party dissemination occurred as "LNRS disbursed Plaintiff's consumer report and/or consumer information to numerous third parties, such as American Express, Rapid Financial Services, LLC, and Nationwide Credit Inc." (Am. Compl.

¶ 57.) The question becomes whether the dissemination to third parties of Plaintiff's inaccurate information regarding his driver's license number and state of issuance sounds more akin to *Spokeo*'s inaccurate zip code or *Ramirez*'s "potential terrorist" alerts. While taking all allegations as true at this stage, the Court holds that the alleged inaccuracies more closely resemble the former, rather than the latter, because they lack disparaging content.

### 2.    Plaintiff has not shown sufficient concrete harm to satisfy injury-in-fact under § 1681e(b)

#### a.    Third Party Dissemination

Plaintiff alleges in his Amended Complaint that LNRS disseminated inaccurate information to third parties, resulting in concrete harm sufficient to satisfy injury-in-fact under Article III. (Am. Compl. ¶ 57.) However, this allegation alone does not constitute an injury.

Plaintiff pled no harms that resulted from the dissemination to third parties of the inaccurate driver's license numbers and states of issuance. In the typical case under the FCRA, the plaintiff can allege that the publication or dissemination of the incorrect information in the consumer report directly resulted in a harm of the type that Congress intended to prevent in requiring the statutory procedures. *See, e.g.*, *Jarrett v. Experian Info. Sols., Inc.*, 2021 WL 1381132, at *5 (E.D. Va. Apr. 12, 2021) (plaintiff pled that he "was turned down for credit," "denied consumer credit to buy a Christmas present for his son," "was deterred from otherwise seeking credit" and "sustained considerable emotional distress" as a result of the credit reporting agency inaccurately reporting him as late on his mortgage account); *Hill v. Equifax Info. Servs., LLC*, 491 F. Supp. 3d 1328, 1332 (N.D. Ga. 2020) (finding standing when plaintiff alleges not only dissemination to third parties but also a drop in her credit score and emotional distress as a result of reporting of an inaccurate outstanding debt). Plaintiff alleges none of the above.

14

In his Amended Complaint, Plaintiff alleges "loss of credit" (Am. Compl. ¶¶ 69, 74, 82) when describing his injuries in each of the Counts in the Complaint, but he offers no factual support. Nowhere else does Plaintiff allege any drop in his credit score or denial of credit, nor does he allege why or how this occurred from the reporting of an inaccurate driver's license number or state of issuance. Plaintiff's arguments that no harm need come from third-party dissemination compounds the allegation's lack of plausibility as do the dearth of subsequent allegations regarding the loss of credit in Plaintiff's Opposition to LNRS or Plaintiff's Opposition to State Farm. Plaintiff insufficiently pleads these boilerplate allegations of loss of credit at this stage to establish an injury-in-fact.

While Plaintiff argues that no harm needed to result from the dissemination, the Fourth Circuit held in *Dreher v. Experian Informational Solutions, Inc.* that, for informational injuries under the FCRA, the injury allegedly suffered must give rise to more than a procedural violation divorced from a concrete harm. 856 F.3d 337, 346-47 (4th Cir. 2017) (finding no standing to bring a claim under § 1681g(a)(2) as the plaintiff "fail[ed] to identify either a common law analogue or a harm Congress sought to prevent, [Plaintiff] is left with a statutory violation divorced from any real world effect. . . . Therefore, [the court] readily h[e]ld that Dreher was not adversely affected by the alleged error on his credit report"). Additionally, other courts have often found that a harm must result from the dissemination or else the injury threshold would not rise above the level of a mere procedural violation, which *Spokeo* rejected. *Spokeo*, 578 U.S. at 342; *see Williams v. Portfolio Recovery Assocs.*, 2022 WL 256510, at *3 (E.D.N.Y. Jan. 27, 2022) (holding that by alleging only that the defendant provided to a third-party the plaintiffs' inaccurate credit data and related information, plaintiffs alleged "no actual tangible harm"); *Ruk v. Crown Asset Mgmt., LLC*, 2017 WL 3085282, at *6 (N.D. Ga. Mar. 22, 2017), *report and*

*recommendation adopted*, 2017 WL 3085686 (N.D. Ga. June 8, 2017) ("[T]he release of some immaterial inaccuracies, such as a mere zip code, would presumably not qualify as a concrete injury."). Courts further emphasize that to plead sufficiently dissemination to third parties to establish a concrete injury, the allegations must be closely analogous to traditional common law torts. In *In re FDCPA Mailing Vendor Cases*, the court found that even inaccurate data reporting outstanding debts to third parties, without allegations of harm resulting from this dissemination, did not confer standing as it failed to analogize to the common law tort of defamation: "It is one thing to falsely brand someone a drug trafficker; reporting that they failed to satisfy a modest obligation is quite another. . . . [I]t seems untenable that the possible non-payment of a relatively small invoice could constitute 'a defamatory statement that would subject [plaintiffs] to hatred, contempt, or ridicule[.]'" 551 F. Supp. 3d 57, 64–65 (E.D.N.Y. 2021) (citation omitted).  If sister courts find insufficient reports of inaccurate debt, then inaccurate driver's license numbers and states of issuance alone cannot satisfy the injury-in-fact prong of Article III standing.

Plaintiff correctly argues, however, that some courts have found dissemination without subsequent harm as sufficient to confer injury-in-fact. (Pl.'s Opp. to LNRS at 6-7.)  However, one can easily distinguish those cases from Plaintiff's case.  Allegations of debts which consumers do not own reported to third parties may satisfy the concrete injury requirement of injury-in-fact. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) (holding that "false reporting itself was the injury" when the defendant repeatedly reported a non-existent delinquent mortgage debt on plaintiff's credit report, among other injuries); *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 564, 566 n.3 (7th Cir. 2021) (finding standing for plaintiffs when credit reports accessed by third parties reported "consumer debts [the plaintiffs] claim[ed] [we]re not owned by the creditors listed on their credit reports").  However, these

16

allegations sound in defamation, due to the possibility of reputational harm that could result from the inaccurate debts, especially when reported to potential creditors, whereas spreading inaccurate driver's license numbers or states of issuance lacks the same risk of reputational harm.[4]

Cases that find dissemination alone sufficient to confer standing involve a heightened risk of harm based on the nature of the information shared with third parties. *Spokeo*, 578 U.S. at 341; *Ramirez*, 141 S. Ct. at 2208. In *Ramirez*, the Court analogized between the risk of sharing inaccurate consumer report information with third parties to the common law tort of defamation. *Id.* The Court cited the definition of a defamatory statement as one "that would subject him to hatred, contempt, or ridicule." *Id.* (*citing Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 13 (1990)). Because a person suffers an injury with the publication of a defamatory statement, publication of credit reports containing OFAC alerts inflicted a harm with a "'close relationship' to the harm associated with defamation." *Id.* at 2209. In the case at bar, the allegations of inaccurate information concern Plaintiff's driver's license number and state of issuance. This type of information does not rise to the level of subjecting Plaintiff to potential hatred, contempt or ridicule, and thus does not reach the level of a defamatory statement.

Similarly, additional cases that find concrete harm from the sole act of dissemination, due to the fact that the reported inaccuracies include false criminal histories, differ remarkably from the inaccurate driver's license or state of issuance of which the Plaintiff complains. *See Ramirez*, 141 S. Ct. at 2209 (finding a concrete harm for standing when defendants disseminated class

---

[4]     Plaintiff again pleads "damage to reputation" in his lists of injuries in each Count of his Amended Complaint (Am. Compl. ¶¶ 69, 74, 82), but Plaintiff provided no additional details. This bare allegation insufficiently establishes a concrete harm that resulted from dissemination of an incorrect driver's license number and state of issuance.

members' reports containing inaccurate OFAC alerts to third parties); *Fernandez v. RentGrow, Inc.*, 341 F.R.D. 174, 190 (D. Md. 2022) (finding plaintiff suffered an injury when defendant gave a report which included a false OFAC alert and criminal history statement to a potential landlord). The risk of reputational harm that could result from the third party reporting of an inaccurate driver's license number or state of issuance does not rise to the level of those analogous to defamatory statements — like false OFAC list alerts — and instead more closely resembles *Spokeo*'s zip code example. *Spokeo*, 578 U.S. at 342. As such, Plaintiff fails to establish a concrete harm necessary for injury-in-fact under Article III based solely upon the dissemination of his consumer report to third parties.

### b.    Emotional Distress and Waste of Time

Plaintiff also alleges that he suffered from emotional distress as a result of LNRS's failure to establish or follow procedures under the FCRA. (Am. Compl. ¶¶ 66, 69.) Plaintiff further alleges that he suffered a loss of time based on LNRS's conduct. (Am. Comp. ¶ 64.) Defendant LNRS argues that Plaintiff merely pleads "generic, boilerplate allegations" of emotional distress and waste of time. (LNRS Reply at 10.) Plaintiff argues that allegations of emotional distress and lost or wasted time can be concrete harms. (Pl.'s Opp. to LNRS at 9.)

Mere boilerplate claims with no detail do not suffice to satisfy the requirements for injury-in-fact. *See Brown v. Alltran Fin., LP*, 2022 WL 377001, at *5 (M.D.N.C. Feb. 8, 2022) (holding that "conclusory assertions do not confer standing"). "Although there may be instances where emotional harm satisfies the Article III injury-in-fact requirement, such claims must be supported by sufficient allegations." *Zlotnick v. Equifax Info. Servs., LLC*, 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022); *Brown*, 2022 WL 377001, at *5 (finding no concrete harm when plaintiff alleged suffering "mental and emotional pain," as they were conclusory allegations,

18

which do not confer standing); *see also Maddox v. Bank of New York Mellon Trust Comp., N.A.*, 19 F.4th 58, 65 (2d Cir. 2021) (rejecting claims of emotional harm where plaintiff failed to "plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief.") (citation omitted).  Here, Plaintiff merely pleads that he felt "greatly distressed," "very concerned," and suffered "emotional distress and mental anguish."  (Am. Compl. ¶¶ 61, 65, 66.)  Plaintiff offers no specific facts to demonstrate these feelings. Threadbare allegations such as these do not confer standing alone.  *See Schmelczer v. Penn Credit Corp.*, 2022 WL 862254, at *7 (S.D.N.Y. Mar. 23, 2022) ("Plaintiff claims only that the Payment Letter caused Plaintiff to become 'confused' and 'concerned' . . . . These claims are insufficient to establish concrete injury sufficient to confer Article III standing.") (internal citations omitted); *Alston v. Experian Info. Sols., Inc.*, 2016 WL 4555056, at *7 (D. Md. Aug. 31, 2016) (finding insufficient injury to confer standing when plaintiff pled "damages including out-of-pocket costs, loss of time, frustration, anger and other emotional or mental stress" as they constituted the "barest of bare bones allegations").

The Fourth Circuit has found that emotional damages are recoverable, but only when the plaintiff can show in some detail the manner in which the distress manifested itself, as conclusory statements will not suffice.[5]  *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 240 (4th Cir. 2009) (finding damages recoverable based on emotional distress when

---

[5]     Plaintiff argues that the Fourth Circuit has long recognized emotional damages as cognizable damages under the FCRA, which thus confers Article III standing. (Pl.'s Opp. to LNRS at 9 n.1.)  Plaintiff erroneously conflates the potential recovery of damages for emotional distress post-liability with the threshold inquiry of injury-in-fact for standing.  While damages may be recoverable down the road, Plaintiff cannot establish standing by way of potential damages, just as he cannot establish standing by simply alleging a cause of action under the FCRA.  *See Spokeo*, 578 U.S. at 342 ("[A plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation.").

plaintiff "presented evidence that her mental distress manifested itself as headaches, sleeplessness, skin acne, upset stomach, and hair loss[,]" and friends and family testified about changes in appearance and demeanor and that she was often visibly upset due to the defendant's conduct). The Fourth Circuit requires plaintiffs to show "true demonstrable emotional distress," because "not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims." *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503-504 (4th Cir. 2007) (upholding a jury award of damages for emotional distress when plaintiff presented evidence that the emotional distress caused insomnia and began to affect her marriage, including seeking a marriage counselor and contemplating divorce). Similarly, while this Court and the Fourth Circuit have found that emotional damages can support injury under the FCRA and the FCRA's sister statute, the Fair Debt Collection Practices Act ("FDCPA"), those cases concerned more robust pleadings and additional allegations of alternate harms that resulted from the inaccurate reporting. *See Miller v. Disk Network, LLC.*, 326 F. Supp. 3d 51, 61 (E.D. Va. 2018) (finding standing when plaintiff pled "aggravation, irritation, loss of happiness and loss of enjoyment of old age, fear, worry, anger, tumult, frustration, vexation and emotional distress," as well as a drop in his credit score); *Moore v. Blibaum & Assocs., P.A.*, 693 F. App'x 205, 206 (4th Cir. 2017) (satisfying Article III standing requirements, under the FDCPA, when plaintiff pled ongoing suffering from "emotional distress, anger, and frustration" as a result of demands of improper amounts of payment).

Similarly, Plaintiff insufficiently pleads claims of wasted time spent correcting his consumer report to support a finding of a concrete harm for standing. Plaintiff relies upon *Losch v. Nationstar Mortgage* in support of his argument that "there is no question that wasted time is a concrete harm." 995 F.3d at 943. But in *Losch*, the plaintiff not only alleged that he suffered

"from stress, anxiety, and lack of sleep" as a result of an inaccurate delinquent mortgage on his credit report, but also that he spent "nearly 400 hours" correcting the inaccuracies. *Id.* The robust nature of these allegations, and their direct causal tie to the defendants conduct, remain a far cry from the barefaced allegation that "Plaintiff lost a significant amount of time" in the Amended Complaint. (Am. Compl. ¶ 64.) Other cases that Plaintiff relies upon list lost time as one of many factors that together support standing. *See, e.g., Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017) (finding a concrete injury when plaintiff lost time attempting to resolve inaccuracies, as well as a one-hundred-point drop in plaintiff's credit rating). A bare allegation of lost time alone fails to support a finding of a concrete harm for standing purposes.

Due to the boilerplate nature of Plaintiff's allegations of wasted time and emotional distress, Plaintiff has not alleged sufficient facts to confer standing based on these alleged harms.

### c.    Postage Expenses

Plaintiff further alleges that he suffered "economic losses over $1 in the form of postage expenses when mailing additional disputes" to Defendants. (Am. Compl. ¶ 64.) In reliance of this claim of concrete harm, Plaintiff cites *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) (Pl.'s Opp. to LNRS at 9.), but that comparison fails here. *Uzuegbunam* holds that nominal damages can sufficiently satisfy the redressability prong of standing requirements if a violation of a legal right occurred, but the Court explicitly emphasized that "[i]t remains for the plaintiff to establish the other elements of standing (such as particularized injury)." *Id.* at 802. Thus, Plaintiff must still establish an injury, however, Plaintiff's allegations do not suffice for concrete harm. *See* § 1681a(d)(1) (preventing harms that arise from communications bearing on consumers' "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" to be used in making credit, insurance and

21

employment decisions).  Allowing this type of alleged injury to confer standing could turn any allegations of inaccuracy into a case with standing under the FCRA, which would contravene the Supreme Court's holding in *Spokeo*.  *See* 578 U.S. at 342 ("[A plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation.").  One dollar of mailing expenses to communicate to a CRA is simply not enough to premise standing under Article III.

Plaintiff's allegations of injury-in-fact based on third-party dissemination, emotional distress, wasted time and postal expenses fail to satisfy Article III's requirement of concrete harm.  Accordingly, the Court holds that Plaintiff lacks standing to bring a claim for money damages under § 1681e(b) against LNRS.

### 3.    Plaintiff has not shown sufficient harm to satisfy injury-in-fact under § 1681i(a)(1).

For the reasons set forth above, Plaintiff also does not have standing to bring his § 1681i(a)(1) claim.  "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]"  *Ramirez*, 141 S. Ct. at 2208 (citations omitted).  Here, Plaintiff alleges the same harms resulting from LNRS's alleged failure to conduct a reasonable reinvestigation as above.  (Am. Compl. ¶ 74.) These allegations also fail for the same reasons as above.

First, Plaintiff again alleges that third-party dissemination alone sufficiently constitutes concrete harm for injury-in-fact.  However, as discussed previously, Plaintiff's alleged inaccuracies, not resolved in the reinvestigation, resulted only in third-party dissemination of an incorrect driver's license number and state of issuance.  These cannot satisfy the requirements for injury as the Amended Complaint lacks (1) a close relationship to a harm traditionally redressed by a lawsuit in American court, because no risk of reputational harm can or did result to analogize to a defamation claim, and (2) evidence of a harm that resulted from the third-party

22

dissemination of the type that Congress sought to rectify in enactment of the FCRA. *Dreher*, 856 F.3d at 346. Missing these two elements, under *Spokeo*, *Ramirez*, and their progeny, Plaintiff fails to allege a concrete harm from third-party publication of his alleged inaccurate license information.

Second, Plaintiff did not sufficiently plead harms resulting from emotional distress and waste of time as a result of LNRS's failure to reasonably reinvestigate. The barebones allegations of time loss and emotional harm, without any detail or corroboration, do not plausibly allege that Plaintiff suffered an injury-in-fact. *Cf. Losch*, 995 F.3d at 943 (finding standing when plaintiff alleged emotional distress symptoms and amount of time lost with specificity). Without more information in the Amended Complaint, Plaintiff lacks Article III standing based on these two theories alone.

Lastly, damages of one dollar resulting from postage expenses do not confer standing as Plaintiff pled insufficient detail as to the allegation of harm. Accordingly, the Court holds that Plaintiff also lacks standing to bring a claim for money damages under § 1681i(a)(1) against LNRS.

### B. Plaintiff Lacks Standing to Bring a Claim for Money Damages Against State Farm.

For the reasons set forth above, Plaintiff also does not have standing to bring his § 1681s-2(b)(1)(A) claim against State Farm. Here, Plaintiff alleges the same harms resulting from State Farm's alleged reasonable investigation as above against LNRS. (Am. Compl. ¶ 82.) The allegations fail for the same reasons as previously outlined.

First, Plaintiff again alleges that third-party dissemination alone sufficiently constitutes concrete harm for injury-in-fact. Plaintiff alleges that State Farm provided the information to one third party, LNRS. (Am. Compl. ¶¶ 32, 42.) "But credit reporting agencies like [LNRS] are

23

not the type of third parties contemplated by the Supreme Court in *TransUnion* [*v. Ramirez*]; rather, the Supreme Court clearly contemplated potential creditors." *Spira v. Trans Union, LLC*, 2022 WL 2819469, at *4–5 (S.D.N.Y. July 19, 2022). However, LNRS allegedly disseminated the information provided from State Farm to third parties, alleviating this issue. (Am. Compl. ¶ 57.) Still, no concrete harm allegedly arose from these disseminations. Thus, the analysis mirrors the above.

Second, as before, Plaintiff did not sufficiently plead harms resulting from emotional distress and waste of time nor postage expenses as a result of LNRS's failure to reasonably reinvestigate.

Accordingly, for the reasons set forth above, the Court holds that Plaintiff also lacks standing to bring a claim for money damages under § 1681s-2(b)(1)(A) against State Farm. Therefore, the Court lacks subject matter jurisdiction over this action against Defendants LNRS and State Farm.

24

## IV.    CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Defendants' Motion to Dismiss (ECF No. 25) and Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 27) and DISMISSES WITHOUT PREJUDICE[6] Plaintiff's Amended Complaint (ECF No. 23).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: September 13, 2022

---

[6]    A "dismissal for lack of standing — or any other defect in subject matter jurisdiction — must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *Ali v. Hogan*, 26 F.4th 587, 600 (4th Cir. 2022) (*citing S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013)).